**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF GEORGIA AUGUSTA DIVISION**

| | | |
|---|---|---|
| JOHN DOE, | * | |
| Plaintiff, | * | |
| v. | * | CV 124-147 |
| RICHMOND COUNTY BOARD OF EDUCATION, et al., | * | |
| Defendants. | * | |

**O R D E R**

Before the Court is Defendants' motion for summary judgment. (Doc. 55.) For the following reasons, Defendants' motion is **GRANTED IN PART and DENIED IN PART.**

## I. BACKGROUND

On August 2, 2024, Plaintiff filed a complaint against Defendants alleging violations of Title IX of the Education Amendments of 1972 ("Title IX") and violations of due process and equal protection under the Fourteenth Amendment of the United States Constitution. (Doc. 1-2, at 1, 8, 19.) Plaintiff was a student enrolled at in the Richmond County School System when the incident giving rise to this action occurred. (Doc. 55-2, at 1, 2; Doc. 81, at 1, 3.) On November 16, 2022, Plaintiff disclosed to Alicia Rocker, a school guidance counselor, that he was "forced

to perform" oral sex on another student ("J.B.") in a bathroom stall at Butler High School sometime in late August or early September 2022. (Doc. 55-2, at 2-3; Doc. 81, at 3.) Plaintiff also told Rocker that a video of the incident was shared via AirDrop to other students, he showed Rocker the video, and he stated the video was sent to him via AirDrop by another student earlier that day. (Doc. 55-2, at 3; Doc. 81, at 3-4, 8.)

After her conversation with Plaintiff, Rocker told the two Assistant Principals, Defendants Marcus Jackson and Dawn Phillips, who both reported the incident to the guidance office. (Doc. 55-2, at 3; Doc. 81, at 9.) Plaintiff then told Defendant Jackson that he was "forced to perform oral sex," Defendant Jackson called the school Principal, Defendant Bernard Chatman, to the front office, told him "two students had sex in the bathroom," and showed Defendant Chatman the video. (Doc. 55-2, at 3; Doc. 81, at 9-11.) Defendant Chatman then met privately with Plaintiff and his mother to discuss the incident. (Doc. 55-2, at 4; Doc. 81, at 11-12.) Defendants state Plaintiff went "back and forth . . . about whether the sexual conduct was consensual" during the meeting, but Plaintiff states he consistently said he was forced to perform the act. (Doc. 55-2, at 4; Doc. 81, at 12.) Defendant Chatman had Plaintiff prepare a written statement while he went to speak separately with J.B. (Doc. 55-2, at 4; Doc. 81, at 12-13.) Defendants state J.B. told Defendant Chatman that Plaintiff was

his boyfriend and "it was not the first time anything happened between them." (Doc. 55-2, at 4.) Defendant Chatman then called Dr. Barnes, the Area Superintendent, to inform her of the incident and collected Plaintiff's written statement, which stated in part:

> I was told to give oral sex and []forced. He cussed at me and told me to do stuff . . . We liked each other, but I never wanted to do anything sexual, because I'm not sexually attracted to people (asexual). . . . I'm scared and honestly want to die. . . . I have attempted multiple times at killing myself.

(Id.; Doc. 81, at 13-14.) An investigator with the Richmond County Board of Education Police Department, Timothy Taylor, was contacted and made aware of the incident. (Doc. 55-2, at 5; Doc. 81, at 15.)

Taylor arrived at the school, spoke with Defendants Jackson and Chatman, and reviewed the video. (Doc. 55-2, at 5; Doc. 81, at 16-17.) Taylor performed a fact-finding interview with Plaintiff, who reiterated the video was taken months prior and shared with others via AirDrop. (Doc. 55-2, at 5; Doc. 81, at 17-18.) Plaintiff stated during the interview that "J.B. befriended him on social media" and "began asking him to perform oral sex," while Plaintiff "did not want to perform the act, but felt like he had to[]." (Doc. 81, at 18.) Additionally, J.B. told Plaintiff "he would kill himself" if Plaintiff did not perform the act, and Plaintiff has considered suicide because of the incident. (Id.) Taylor did not speak to J.B. at that time because the student's

mother refused to speak to Taylor without an attorney. (Doc. 55-2, at 6; Doc. 81, at 20.) Rocker then completed a suicide assessment on Plaintiff, and she rated him as high risk, so he was transported to the hospital. (Doc. 55-2, at 6; Doc. 81, at 21.)

On November 17, 2022, Rocker reported the situation to the Georgia Department of Human Services Division of Family and Children Services ("DFCS"), but DFCS did not assign the matter for investigation. (Doc. 55-2, at 6; Doc. 81, at 21.) Taylor attended a forensic interview of Plaintiff on December 1, 2022 and began an investigation to determine how the video was sent, by whom, and who had received the video. (Doc. 55-2, at 7.; Doc. 81, at 21-22.) Taylor could not determine who sent the video, and the Parties dispute whether Taylor followed up with witnesses about the dissemination of the video, as Plaintiff states his mother provided names of people who knew about the video, but Taylor never acted on the leads. (Doc. 55-2, at 7; Doc. 81, at 22-23.)

Also on November 17, 2022, Defendant Phillips prepared an incident report charging Plaintiff with violating Rules 1 and 8(A) of the Code of Student Conduct and Discipline for "sexual activity in the school restroom." (Doc. 55-2, at 7; Doc. 81, at 23.) Defendant Chatman suspended both students for ten days. (Doc. 55-2, at 8; Doc. 81, at 30-31.) The Parties dispute whether Defendant Chatman recommended a tribunal with hearing or a remand to the school. (Doc. 55-2, at 8; Doc. 81, at 30-31.) Under school

policy, for matters involving out-of-school suspension for ten days or less, the Principal has final authority and a request for a disciplinary hearing is not required. (Doc. 55-2, at 8; Doc. 81, at 34.) After an incident report is prepared, it is sent to the Office of School Climate, and they decide whether to hold a tribunal hearing or remand to the school. (Doc. 55-2, at 8; Doc. 81, at 34-35.) On December 8, 2022, the matter was remanded to the school by the Office of School Climate, and Plaintiff's suspension took place between November 17, 2022 through December 7, 2022. (Doc. 55-2, at 9; Doc. 81, at 39-40.) Plaintiff was also placed on probation for the rest of the 2022-2023 school year. (Doc. 55-2, at 9; Doc. 81, at 40.)

Defendants state the Bulter administration discussed a transition plan with Plaintiff's mother that would allow him to transfer to Cross Creek, coordinated for her to pick up school assignments for Plaintiff, and allowed Plaintiff to participate in grade recovery during and after his suspension. (Doc. 55-2, at 9.) Alternatively, Plaintiff states Butler did not assist in Plaintiff's transition until after Plaintiff's mother contacted the school about missed assignments and requested a zone exemption to enroll Plaintiff at Cross Creek. (Doc. 81, at 40-44.) Plaintiff began attending Cross Creek in January 2023, and the school held a re-entry support meeting that included creating a safety plan involving coping strategies, staff member

responsibilities, and dates for future review meetings. (Doc. 55-2, at 10; Doc. 81, at 44-45.) After Plaintiff's transfer, Butler allowed Plaintiff to complete one assignment to show mastery of course material as a final grade. (Doc. 55-2, at 11; Doc. 81, at 46.) Plaintiff had a history of failing grades beginning in 2019 and continuing through 2024. (Doc. 55-2, at 11-12; Doc. 81, at 46-48.) Nevertheless, Plaintiff states his grades suffered the most in 2022-2023, during his freshman year, "when he was sexually battered and sexually harassed," and transferred schools because of the incident. (Doc. 81, at 46-47.)

On August 2, 2024, Plaintiff filed suit against Defendants in the Superior Court of Richmond County, Georgia. (Doc. 1-2, at 1.) Plaintiff seeks the following relief: (1) special damages totaling $500,000.00; (2) general damages; (3) injunctive relief "in the form of a change in policy and procedure and training for personnel under Title IX"; and (4) attorney's fees, expenses, and costs. (Id. at 23.) On August 28, 2024, Defendants removed. (Doc. 1, at 1.) On November 4, 2025, Defendants moved for summary judgment on all of Plaintiff's claims. (Doc. 55.) Plaintiff responded. (Docs. 80, 81.) Defendants replied, and Plaintiff filed a surreply. (Docs. 94, 96.) The motion is now ripe for the Court's review.

## II. LEGAL STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Facts are "material" if they could "affect the outcome of the suit under the governing [substantive] law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and a dispute is genuine "if the non[-]moving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." Waddell v. Valley Forge Dental Assocs., Inc., 276 F.3d 1275, 1279 (11th Cir. 2001). The Court must view factual disputes in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must "draw all justifiable inferences in [the non-moving party's] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (citation, internal quotation marks, and internal punctuation omitted). The Court should not weigh the evidence or determine credibility. Anderson, 477 U.S. at 255.

The moving party has the initial burden of showing the Court, by reference to materials in the record, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the non-movant bears the burden of proof at trial, the movant has two options as to how it can carry its initial burden. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-16 (11th Cir. 1993). The movant

may show an absence of evidence to support the nonmovant's case or provide affirmative evidence demonstrating the nonmovant's inability to prove its case at trial. Id.

If the movant carries its initial burden, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." Vaughn v. Ret. Sys. Of Ala., 856 F. App'x 787, 789 (11th Cir. 2021) (citation omitted). The non-movant must tailor its response to the method by which the movant carries its initial burden. Fitzpatrick, 2 F.3d at 1116-17. For example, if the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Id. at 1116. On the other hand, if the movant shows a lack of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1116-17 (citations omitted). The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

In this action, the Clerk of Court provided Plaintiff with notice of the motion for summary judgment, the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. 57.) For that reason, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985), have been satisfied.

## III. DISCUSSION

The Court analyzes Plaintiff's claims in turn.

### A. Count 1: Title IX Violations Regarding Student-on-Student Sexual Harassment

Defendants move for summary judgment on Plaintiff's Title IX sex discrimination claim, arguing (1) Defendants Richmond County Board of Education ("Defendant Board") and Richmond County School System ("Defendant School System") were not deliberately indifferent; and (2) the alleged harassment was not severe, pervasive, and objectively offensive, nor did it deprive Plaintiff access to an educational opportunity or benefit. (Doc. 55-1, at 7, 10.) Plaintiff argues his claim succeeds because (1) there is no material dispute on the funding recipient and appropriate person elements; (2) Defendants acted with deliberate indifference as to Plaintiff's protection and support; and (3) the sexual harassment Plaintiff suffered was severe, pervasive, and objectively offensive, and it impacted his education. (Doc. 80, at 16, 18.)

Plaintiff notes Defendants do not move for summary judgment on his Title IX retaliation claim, while Defendants argue Plaintiff's complaint did not contain a retaliation claim.[1] (Doc. 80, at 14 n.6; Doc. 94, at 5.)

Under Title IX, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The Supreme Court held this statute creates a private cause of action for "student-on-student" sex

[1] Federal Rule of Civil Procedure 8(a) requires a plaintiff to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." As such, the allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." The purpose of this rule is "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). "At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a)." Gilmour v. Gates, McDonald and Co., 382 F.3d 1312, 1315 (11th Cir. 2004). "A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment." Id. (citation omitted).

Plaintiff argues one allegation in his complaint encompasses his retaliation claim and places Defendants on notice: "Defendants . . . violated Title IX following Plaintiff's disclosure of his sexual harassment by . . . [f]ailing to protect victims of sexual harassment and instead punishing Plaintiff for coming forward." (Doc. 96, at 6 (quoting Doc. 1-2, at 10).) In context, this statement relates to Defendants' decision to suspend Plaintiff for ten days following his report to administration. (Doc. 1-2, at 10.)

Plaintiff never mentions retaliation in his complaint or provides any other assertion relating to a Title IX retaliation claim. As such, the Court finds Plaintiff's single general allegation is not enough to put Defendants on notice that Plaintiff intended to hold them liable for retaliation under Title IX. See Lightfoot v. Henry Cnty. Sch. Dist., 771 F.3d 764, 779 (11th Cir. 2014) ("The general allegations that appear elsewhere in the complaint merely supported [the plaintiff's] FMLA retaliation count, and did not put the School District on notice that they also pertained to her ADA retaliation count."); Gilmour, 382 F.3d at 1315 ("Liberal pleading does not require that, at the summary judgment stage, defendants must infer all possible claims that could arise out of facts set forth in the complaint."). The Court finds Plaintiff did not plead a Title IX retaliation claim in his complaint; therefore, it will not consider the merits of the claim.

discrimination or harassment. Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 633 (1999). To be liable for student-on-student sex discrimination, (1) the defendant must be a Title IX funding recipient; (2) an "appropriate person" must have actual knowledge of the discrimination or harassment; (3) the discrimination "must be severe, pervasive, and objectively offensive," such that they deprive the victim of access to educational benefits or opportunities; and (4) the funding recipient must have acted with "deliberate indifference" to the incidents. Hill v. Cundiff, 797 F.3d 948, 970 (11th Cir. 2015) (quotations and citation omitted); A.P. v. Fayette Cnty. Sch. Dist., No. 21-12562, 2023 WL 4174070, at *5 (11th Cir. June 26, 2023) (quotations and citation omitted).

In their motion, Defendants assume Defendant School System and Defendant Board are Title IX recipients and do not argue whether an appropriate person had actual knowledge of the alleged harassment. (Doc. 55-1, at 7 n.1.) Thus, the Court finds these elements uncontested, assumes they are satisfied, and turns to the remaining two elements.

1. Severity of Harassment and Deprivation of Educational Benefits

Defendants argue Plaintiff's alleged harassment "was not severe, pervasive, and objectively offensive, and it did not deprive Plaintiff of his access to an educational opportunity or

benefit." (Id. at 10.) Defendants argue this is because the alleged discrimination was "a single act of oral sex between two students"; it occurred months prior to be reported which "mitigates against concluding it was pervasive and severe"; Plaintiff transferred schools so that he would not be harassed by J.B. again; and Butler worked to allow Plaintiff educational opportunities such as grade recovery after his hospitalization and transfer. (Id. at 12-13.)

Plaintiff argues the harassment was severe, pervasive, offensive, and it impacted his educational opportunities because the distribution of the video itself is objectively offensive sexual harassment; each time the video was shared, the harassment became more pervasive and severe; and the creation and distribution of the video "permanently alter[ed] the trajectory of [Plaintiff's] education." (Doc. 80, at 16-18.)

This element requires that the sex discrimination Defendants had actual knowledge of "was sufficiently severe, pervasive, and objectively offensive." A.P., 2023 WL 4174070, at *6 (quotations and citation omitted). "Whether gender-oriented conduct rises to the level of actionable Title IX harassment . . . depends on a constellation of surrounding circumstances, expectations, and relationships, including, but not limited to, the ages of the harasser and the victim and the number of individuals involved." Hill, 797 F.3d at 972 (quotations and citation omitted, alteration

adopted). To satisfy this element, "the behavior must be serious enough to have a 'systemic effect' of denying equal access to an education." Id. at 652 (citation omitted). "A single instance of sufficiently severe one-on-one peer harassment cannot have such a systemic effect in light of the amount of litigation that would be invited by entertaining claims of official indifference to a single instance of one-on-one peer harassment." Id. at 652-53 (quotations and citation omitted).

The Court finds there is a genuine issue of material fact as to whether the harassment was severe, pervasive, and objectively offensive. The Eleventh Circuit has held, "[o]nly in 'unique' circumstances—when sexual assaults were part of a 'continuous series of events' constituting a larger scheme—have we found a single sexual assault incident sufficient to satisfy Title IX." A.P., 2023 WL 4174070, at *6 (citing Hill, 797 F.3d at 972-73; Williams v. Bd. of Regents, 477 F.3d 1282, 1297-98 (11th Cir. 2007)). The Court notes the Eleventh Circuit caselaw is not factually on point, as the cited cases do not involve the creation and dissemination of a video of a minor engaged in sexually explicit acts on school property. However, Plaintiff cites S.C. v. Metro. Gov't of Nashville and Davidson Cnty. in support. (Doc. 80, at 13 (citing 579 F. Supp. 3d 999 (M.D. Tenn. 2022)). In S.C., a minor female student ("S.C.") was forced to perform oral sex and sexually assaulted by a male student in an empty classroom. 579

F. Supp. 3d at 1017-18. During the assault, another student began filming the sexual activity with her phone, which was shared with other students at the school. Id. at 1018. S.C. knew the video was sent to others because multiple students showed her the video on their personal devices and asked her if she "was the girl in the video." Id. The court found that S.C. showed the defendant had actual knowledge of the sexual harassment because it had "knowledge that the video was being circulated against her wishes." Id. at 1037. The court also stated "[t]here is no plausible argument that mass circulation of child pornography in the school of the children depicted falls anywhere near short of the level of severity necessary to be actionable." Id. That is precisely what occurred here. It is undisputed that a peer at Butler who was not present during the incident sent Plaintiff the video, which shows the video was disseminated among an unknown number of other students. (Doc. 55-2, at 3; Doc. 80, at 4.) Further, a video taken of a minor participating in sexual activity without his consent, whether the act itself was consensual or not, is objectively offensive.

In addition, Plaintiff shows the harassment impacted his access to educational opportunities because the initial incident and sharing of the video effectively required him to transfer schools due to cyberbullying and reputational harm. (Doc. 85-4, at 13; Doc. 86-3, at 5.) These incidents also resulted in physical

harm, as Plaintiff became suicidal and began to self-harm. (Doc. 86-3, at 3.) Given the unique circumstances and the "continuous series of events" that occurred because of the repeated sharing of the video, the Court holds a genuine issue of material fact exists, and a reasonable jury could find the harassment was severe, pervasive, and objectively offensive. A.P., 2023 WL 4174070, at *6.

2. Deliberate Indifference

Defendants argue Defendant Board and Defendant School System were not deliberately indifferent to the incident because even if their response was not a "perfect execution of local Title IX procedures," it was not clearly unreasonable, and there is no evidence that Defendants' handling of the matter contributed to the alleged harassment or made Plaintiff more vulnerable. (Doc. 55-1, at 10.) Plaintiff argues "Defendants acted with deliberate indifference by not attempting to stop the video's distribution, [failing to] institute a no-contact order that would have protected [Plaintiff] from J.B., or provide [Plaintiff] with necessary support and accommodations[,]" punishing Plaintiff the same as J.B, and not following Title IX procedures. (Doc. 80, at 18, 24-27.)

"[F]unding recipients are deliberately indifferent 'only where the recipient's response to the harassment or lack [of response] is clearly unreasonable in light of the known

circumstances.'" Hill, 797 F.3d at 973 (quoting Davis, 526 U.S. at 648). "A clearly unreasonable response causes students to undergo" sex discrimination or harassment, "or makes them more vulnerable to it." Id. (citation omitted). However, a school district is not deliberately indifferent when it "conducts a reasonable investigation and determines, based on the record, that there's not enough evidence to support the allegation." A.P., 2023 WL 4174070, at *7 (citations omitted).

The Court finds a genuine dispute of material fact exists as to whether Defendants' action or nonaction qualifies as deliberate indifference. "To survive a summary judgment motion, a Title IX plaintiff must present evidence from which a reasonable jury could conclude the Title IX recipient's deliberate indifference to the initial discrimination subjected the plaintiff to further discrimination." Hill, 797 F.3d at 973 (citation and quotations omitted). The Court determined above that the circulation of child pornography constitutes actionable Title IX harassment. As such, the incident in the bathroom was the initial discrimination, while the dissemination of the video constituted further discrimination. Plaintiff shows he experienced bullying after the incident, such as numerous students questioning if he was homosexual, calling him a "faggot" and "gay boy," and male friends "acting strangely" with him. (Doc. 86-3, at 2.) Before he was aware of the video, Plaintiff began receiving unprompted messages from students asking

questions like, "[i]s you gay?" (Id. at 3.) After he reported the video, Plaintiff began wearing masks and dyeing his hair because he "feared being recognized due to the video." (Id.) Thus, there is evidence Plaintiff experienced additional issues due to the dissemination of the video.

Defendants focus their arguments on the sufficiency of their investigation into the incident, but regardless of whether Defendants' investigation into the initial incident was adequate, the issue lies with Defendants' knowledge of the video and the understanding that it was being sent to students in the school. (Doc. 55-1, at 9-10.) Although Plaintiff experienced bullying before Defendants were aware of the situation, once Defendants learned of the video, a reasonable jury could find that their failure to attempt to prevent additional discrimination made them deliberately indifferent.

It is undisputed that Defendants were aware of the video on November 16, 2022, because both Parties confirm Defendant Jackson and Investigator Taylor procured copies and Defendant Chatman watched the video on that date. (Doc. 55-2, at 4-5.) Plaintiff's mother's affidavit provides that Defendants did not order the separation of Plaintiff and J.B. or otherwise attempt to prevent further dissemination of the video. (Doc. 85-5, at 3-5.) While the Court understands the difficulties in tracing the video, especially if sharing occurred outside of school, the Defendants'

lack of response other than an "inconclusive" investigation completed by Investigator Taylor create a genuine issue of material fact as to Defendants' deliberate indifference. (Doc. 67-3, at 26-27.)

Given the above, the Court finds there are genuine disputes of material fact as to two elements of Plaintiff's Title IX sex discrimination claim, and as such, Defendants' motion for summary judgment as to this claim is **DENIED.**

**B. Count 2: § 1983 Claims for Violations of Due Process and Equal Protection Under Fourteenth Amendment**

Defendants argue Plaintiff's § 1983 claims under the Fourteenth Amendment fail because (1) Plaintiff cannot assert Title IX claims against Defendants Chatman, Jackson, and Phillips through § 1983 because only funding recipients can be held liable for violations of Title IX; (2) qualified immunity applies to individual Defendants; (3) Plaintiff has not put forth specific allegations of Equal Protection violations; (4) Plaintiff has not established a constitutional violation because a suspension of ten days or less requires minimal due process rights; and (5) Plaintiff has not shown a policy or custom of Defendants that led to a deprivation, and Defendants were not deliberately indifferent. (Doc. 55-1, at 13-24.)

Plaintiff argues his § 1983 claims against all Defendants survive summary judgment because (1) he shows municipal officials

acted with deliberate indifference; (2) a reasonable jury could find the Board utilized policies, customs, or practices that caused Plaintiff's injuries; (3) there was a failure to train administrators on proper Title IX procedures; (4) Defendants denied Plaintiff equal protection by punishing him for the sex-based harassment; and (5) as to due process, a jury could find Defendants disregarded Plaintiff as a victim and intentionally denied him due process with a tribunal to cover up their deliberate indifference. (Doc. 80, at 29-34.) Further, Plaintiff argues qualified immunity does not apply because he has shown Defendants had policies that led to deliberate indifference, there was intentional discrimination against Plaintiff that deprived him of his education without due process, and the right to be free from sexual harassment was clearly established. (Id. at 35.)

"Section 1983 allows persons to sue individuals or municipalities acting under the color of state law for violations of federal law." Hill, 797 F.3d at 976. "One such law is the Equal Protection Clause, which confers a federal constitutional right to be free from sex discrimination." Id. (citations omitted). The Court examines Plaintiff's claims against each Defendant below.

1. Individual Defendants Chatman, Jackson, and Phillips

A "stringent standard of fault" applies to a municipal official's individual liability. Id. at 977-78 (citation

omitted). An official can be held personally "liable under section 1983 upon a showing of deliberate indifference to known sexual harassment." Id. at 978 (citation omitted). To establish this claim, the "plaintiff must prove the individual defendant actually knew of and acquiesced in the discriminatory conduct." Id. (quotations and citation omitted). But qualified immunity protects individual government officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (citations omitted). When a court determines the individual defendant was participating in a discretionary function, "the burden shifts to the plaintiff to show that the defendant is *not* entitled to qualified immunity." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004) (citation omitted).

Defendants argue that (1) Defendants Chatman, Jackson, and Phillips were not deliberately indifferent to the incident; (2) none of them were final decisionmakers for purposes of § 1983 liability; and (3) qualified immunity applies because they acted within the scope of their discretionary authority and did not violate a clearly established right. (Doc. 55-1, at 21-24.) Plaintiff argues the three Defendants were deliberately indifferent, and qualified immunity does not apply. (Doc. 80, at

34-35.) Plaintiff does not argue Defendants acted outside the scope of their discretionary authority but asserts "the constitutional right to be free from sexual harassment and the entitlement to due [process] were clearly established" when these events took place. (Id. at 35.)

As discussed above, the Court found there is a genuine issue of material fact as to whether Defendants were deliberately indifferent to known sexual harassment. Thus, the Court turns to whether qualified immunity applies to any of the three individual Defendants, analyzing whether Defendants violated a clearly established constitutional right.

> A right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.

Hill, 797 F.3d at 979 (citation and quotations omitted). The Eleventh Circuit has recognized the Equal Protection Clause "confers a federal constitutional right to be free from sex discrimination," which qualifies under the second option in Hill. Id. at 976 (citing U.S. CONST. amend. XIV, § 1; Pers. Adm'r of Mass. v. Feeney, 442 U.S. 256, 273 (1979)). As such, the Court finds this right was clearly established and there is a genuine issue of material fact as to whether Defendants violated Plaintiff's right.

As to Plaintiff's Due Process claim, the Court finds the individual Defendants did not violate a clearly established right.

> Where a student is suspended for ten days or less, the constitutional procedural requirements are minimal, merely requiring that the student was given (1) notice of the charges against him, (2) an explanation of the evidence supporting the charge, and (3) an opportunity for him to present his version of the basis for the action.

Jones v. Long Cnty. Sch. Dist., No. 2:11-cv-005, 2012 WL 3562300, at *5 (S.D. Ga. Aug. 14, 2012) (citing Barnes v. Zaccari, 669 F.3d 1295, 1305 (11th Cir. 2012); Goss v. Lopez, 419 U.S. 565, 577 (1975)). Additionally, "[t]he dictates of Goss are clear and extremely limited: Briefly stated, once school administrators tell a student what they heard or saw, ask why they heard or saw it, and allow a brief response, a student has received all the process that the Fourteenth Amendment demands." C.B. By and Through Breeding v. Driscoll, 82 F.3d 383, 386 (11th Cir. 1996). For these "short-term suspensions," the hearing need only be a "rudimentary" one. Id. at 388 (citing Goss, 419 U.S. at 581).

Because Plaintiff's exclusion from the education process totaled ten days, the Defendants only had to provide him with "oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." Zaccari, 669 F.3d at 1305 (quoting Goss, 419 U.S. at 581-82). Plaintiff was informed of the charges, all parties knew about the video, and Plaintiff

had a chance to detail his account of the incident in multiple interviews and a written statement. (Doc. 67-2, at 16, 18-19; Doc. 67-3, at 13-15; Doc. 67-1, at 10-15.) On November 29, 2022, after Defendants created the principal's incident report charging both students with engaging in sexual activity on campus, Plaintiff's mother spoke to Defendant Phillips over the phone. (Doc. 67-2, at 30, Doc. 85-19, at 1; Doc. 85-21, at 1; Doc. 88-6, at 7.) Defendant Phillips told her the Student Code of Conduct rules Plaintiff was charged with violating, and Plaintiff's mother reiterated their stance that Plaintiff was a victim. (Doc. 85-19, at 1-2.) Plaintiff's mother also emailed Shawnda Griffin, a member of the Board of Education, to explain the situation, and that email was forwarded to the Superintendent. (Id.) Given the above facts, Eleventh Circuit caselaw, and Supreme Court precedent, the Court finds Plaintiff's claimed right to a tribunal hearing for his ten-day suspension was not clearly established or violated. Goss, 419 U.S. at 577; Driscoll, 82 F.3d at 386.

Given the above, the Court does not find qualified immunity protects the individual Defendants from Plaintiff's § 1983 Equal Protection claim, but qualified immunity applies to the § 1983 Due Process claim under Goss. 419 U.S. at 581. Thus, Defendants' motion for summary judgment is **GRANTED** as to the individual Defendants on Plaintiff's § 1983 Due Process claim and **DENIED** as to Plaintiff's § 1983 Equal Protection claim.

2. Defendants School System and Board

Defendants School System and Board "may not be held liable for constitutional deprivations on the theory of respondeat superior." Denno v. Sch. Bd. of Volusia Cnty., 218 F.3d 1267, 1276 (11th Cir. 2000). A municipality may be held liable "only if such constitutional torts result from an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law." Id. (citations omitted). "[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality." Bd. of Cnty. Com'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404 (1997). "[A] plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Id. The Supreme Court has noted the "deliberate indifference" standard under § 1983 "requir[es] proof that a municipal actor disregarded a known or obvious consequence of his action." Id. at 410. Further, there must be a link between the action and the alleged injury such that the evidence shows the deprivation of the constitutional right is a "plainly obvious consequence" of the municipal action. Id. at 410-11. The Court determined above that there is a genuine issue of material fact as to whether Defendants were deliberately indifferent to known

sexual harassment, so the analysis turns to Defendants School System and Board's customs, policies, or practices.

a. *Custom, Policy, or Practice*

Plaintiff argues a reasonable jury could find Defendant Board had customs, policies, and practices that caused Plaintiff's injuries, such as

> (1) a practice of routing sexual assaults and sexual harassment into discipline and tribunal, rather than treating them as Title IX matters; (2) a custom of treating victim and perpetrator identically in discipline, regardless of age or victimization; and (3) the failure of the [Defendants] Superintendent and Board, despite actual notice of the sexual harassment and video, to take any meaningful steps to stop the ongoing circulation of child pornography depicting Plaintiff or to implement appropriate protective measures.

(Doc. 80, at 30.) Defendants argue Plaintiff has identified one express policy, Rule 27, which requires a formal tribunal hearing when expulsion or long-term suspension are requested, and does not apply here. (Doc. 94, at 16.) Further, Defendants argue Plaintiff uses a single statement to allege a widespread custom that incidents of sexual activity on campus are automatic tribunal referrals, and Plaintiff does not establish other times when students engaging in sex on campus were not disciplined. (Id. at 17.)

"[T]o impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted

deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004) (citation omitted). Further,

> [a] plaintiff can establish § 1983 liability by identifying that []he has been deprived of constitutional rights by either an express policy or a 'widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom and usage with the force of law.'

Cuesta v. Sch. Bd. of Miami-Dade Cnty., 285 F.3d 962, 966 (11th Cir. 2002) (citation omitted). The Court therefore examines whether Defendants School System or Board had a "municipal custom, policy, or practice" that caused Plaintiff's alleged deprivations. Hill, 797 F.3d at 977 (citing Fitzgerald v. Barnstable Sch. Comm., 555 U.S. 246, 257-48 (2009)).

As to Plaintiff's Equal Protection claim, the Court finds Plaintiff fails to show a policy, practice, or custom that was "the moving force of the constitutional violation." Cuesta, 285 F.3d at 967 (citation omitted). Plaintiff's assertions mainly focus on the tribunal and Defendant Chatman's disciplinary decisions. (Doc. 80, at 30.) When he addresses the circulation of the video, the harassment at issue, he fails to show a direct causal link between any established practice that is "permanent and well settled" and his constitutional deprivation. Cuesta, 285 F.3d at 966. If anything, Plaintiff's evidence and assertions indicate his true issue with Defendants is a lack of policy,

custom, or practice when addressing Title IX incidents and sexual assault cases. Plaintiff has not shown Defendants School System and Board treated other instances of sexual activity and harassment similarly to Plaintiff's according to a purported custom or practice. The Eleventh Circuit has held, "isolated incidents are insufficient to establish a custom or policy." Church v. City of Huntsville, 30 F.3d 1332, 1345 (11th Cir. 1994) (citation omitted). Thus, the Court finds Plaintiff has failed to produce evidence creating a genuine issue of fact as to a pervasive or established practice of avoiding Title IX reporting, punishing perpetrators and victims identically, or denying tribunals when lawfully appropriate. (Doc. 80, at 30.) As such, Defendants' motion for summary judgment as to Plaintiff's § 1983 Equal Protection claim against Defendants School System and Board is **GRANTED**.

As to Plaintiff's Due Process claim, Defendants argue Plaintiff has failed to establish a constitutional violation because a suspension of ten days or less affords minimal due process rights. (Doc. 55-1, at 16.) The Court agrees, as it has already determined the lack of a hearing for his ten-day suspension did not violate clearly established law, nor was it a deprivation of a constitutional right. Goss, 419 U.S. at 577; Driscoll, 82 F.3d at 386. Rather, Defendants followed the known procedure for disciplinary decisions involving suspensions of ten days or less.

The Eleventh Circuit has held that "[a]nalysis of a state entity's custom or policy is unnecessary . . . when no constitutional violation has occurred." Garczynski v. Bradshaw, 573 F.3d 1158, 1170 (11th Cir. 2009) (citation omitted). Therefore, there is no genuine issue of material fact as to whether Defendants had a custom, policy, or practice that violated Plaintiff's Due Process involving a right to a tribunal. A tribunal hearing was not afforded to Plaintiff by law based on the discipline he received, so no constitutional violation occurred, and any relevant policy or custom is immaterial to Plaintiff's § 1983 Due Process claim. Thus, Defendants' motion for summary judgment as to Plaintiff's § 1983 Due Process claim against Defendants School System and Board is **GRANTED**.

b. *Failure to Train*

Plaintiff argues the record supports a Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978) claim based on failure to train because school employees testified they were vaguely aware of Title IX, never reported a matter to Title IX, did not know who the Title IX coordinator was, and did not receive Title IX training.[2] (Doc. 80, at 31.) Defendants argue "Plaintiff has failed to point to any evidence that there was a pattern of training deficiencies or

---

[2] The Court notes Plaintiff raises his failure to train argument for the first time in his response to Defendants' motion for summary judgment. (Doc. 80, at 31.) Although it was not properly raised, the Court considers the argument out of an abundance of caution.

that the government entity was aware of any alleged deficiencies," and he cannot show a failure to train was the moving force behind his alleged harassment. (Doc. 94, at 19.)

To show failure to train, a plaintiff must provide "some evidence of a pattern of improper training" and "show that [Defendants were] aware of the deficiencies in [their] program." Underwood v. City of Bessemer, 11 F.4th 1317, 1333 (11th Cir. 2021) (citation omitted). Plaintiff points to deposition testimony from counselor Rocker about her lack of understanding of Title IX procedures and minimal training. (Doc. 80, at 31; Doc. 67-1, at 39-42). However, Plaintiff argues the lack of training shows why Plaintiff "was routed exclusively through the discipline system," which pertains to Plaintiff's due process rights rather than the sexual harassment. (Doc. 80, at 31.)

> [I]t is not sufficient to merely establish that [Defendants] knew or should have known of a need to train. A § 1983 plaintiff must also show that the governmental entity was the 'moving force' behind the injury alleged . . . . The fact that further training might have prevented the constitutional injury does not, in and of itself, establish a failure to train claim.

Dale v. Stephens Cnty. Sch. Dist., No. 2:04-cv-151, 2008 WL 11408460, at *2 (N.D. Ga. June 6, 2008) (citing Brown, 520 U.S. at 404; City of Canton v. Harris, 489 U.S. at 378, 391 (1989)).

Given the above, the Court finds Plaintiff fails to establish a genuine issue of material fact as to whether the alleged failure to train was the "moving force" behind Plaintiff's sex

discrimination. The Court already determined Plaintiff did not suffer a due process constitutional injury from Defendants' disciplinary handling of the incident or failure to provide a tribunal. Plaintiff does not show further training would have prevented the sexual harassment or that there was a sufficient pattern of improper training. Underwood, 11 F.4th at 1333; Dale, 2008 WL 11408460, at *2. Although Rocker's deposition testimony indicates the school administrators did not receive large amounts of Title IX training, it is not enough to indicate that a lack of training ultimately caused Plaintiff's constitutional injury. (Doc. 67-1, at 39-42.) As such, to the extent Plaintiff seeks Monell failure to train claims against Defendants School System and Board, summary judgment is **GRANTED** to the Defendants on these claims.

## IV. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Defendants' motion for summary judgment (Doc. 55) is **GRANTED IN PART and DENIED IN PART**. The Clerk is **DIRECTED** to **ENTER JUDGMENT** in favor of Defendants on the following claims: Count 2: § 1983 Due Process claims against all Defendants; § 1983 Equal Protection claims against Defendants School System and Board; and § 1983 Failure to Train claims against Defendants School System and Board. Plaintiff's remaining claims shall proceed to trial in due course.

**ORDER ENTERED** at Augusta, Georgia, this 17th day of September, 2026.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA